23 C.C.P.A.(Patents)

## GEORGIEV v. EDELMAN.

### Patent Appeal No. 3576.

Court of Customs and Patent Appeals.
Feb. 3, 1936.

GRAHAM, Presiding Judge, and BLAND, Associate Judge, dissenting.

———◆———

Dean, Fairbank, Hirsch & Foster, of New York City, and H. H. Benjamin, of Washington, D. C. (Morris Hirsch, of New York City, of counsel), for appellant.

Ephraim Banning, of Chicago, Ill. (Arthur R. Wylie, of Chicago, Ill., and Eugene C. Taylor, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee, Philip E. Edelman.

The interference is between appellant's patent No. 1,789,949, in which the counts originated, issued January 20, 1931, on an application filed October 18, 1930, serial No. 489,521, and appellee's application No. 389,388, filed August 30, 1929.

The invention relates to an electrolytic condenser, and, for the purpose of this opin-ion, is sufficiently described in the counts in issue, Nos. 1 and 2. They read:

"1. An electrolytic condenser comprising a roll having convolute layers of anode foil and cathode foil, a dielectric film upon the anode foil in contact therewith, the foil at the exterior of the roll having an outer turn completely encircling the roll, *the outer end of said outer foil protruding beyond the end of the other foil, and directly overlying and engaging the underlying area of said outer foil.*

"2. An electric condenser comprising a roll having convolute layers of anode foil and cathode foil, a dielectric film upon the anode foil in contact therewith, the cathode foil being at the exterior of the roll and having an outer turn completely encircling the roll, *the outer end of said cathode foil protruding beyond the end of the anode and directly overlying and engaging the underlying cathode area.*" (Italics ours.)

Counsel for appellant moved to dissolve the interference on the ground that appellee had no right to make the claims constituting the counts in issue.

The motion was denied by the Examiner of Interferences.

The sole issue before us, as stated by counsel for each of the parties, and as clearly appears from the record, is whether the counts are readable on appellee's disclosure. If they are, the decision of the Board of Appeals must be affirmed. If they are not, the decision should be reversed.

It was the contention of counsel for appellant before the tribunals of the Patent Office, and it is their contention here, that appellee did not disclose in his application as originally filed that element of the involved invention defined in the counts, of which the following language taken from count 1 is illustrative: "The outer end of said outer foil protruding beyond the end of the other foil, and directly overlying and engaging the underlying area of said outer foil."

In his decision, the Examiner of Interferences quoted the following excerpt from appellee's specification: "The sheet 45 may be of any other suitable metal besides aluminum. Metal 45 is smoothed between rollers 46 and started as a winding as end 45ª thereof. * * * The winding of sheet 45 is continued after element 47 is rolled up so that metal 45 extends beyond and over the element 47. * * * The negative sheet 45 is overlapped around the roll 52

and has a tab terminal 49 brought up therefrom, while tab terminals 5 and 5ª from two elements, such as 47, Fig. 10, are brought up in usual manner," and stated: "The direction in which two foils are shown to be rolled in Fig. 10 places the foil 45 on the outside of the last turn in a manner similar to foil 11'; Fig. 3 of Georgiev. If, as is stated in Edelman's specification, the foil '45 is continued after element 47 is rolled up' it must 'protrude' as specified in count 1 and being unseparated from the next lower turn it would 'overly and engage the underlying cathode area' as specified in count 2."

In its decision affirming the decision of the Examiner of Interferences, the Board of Appeals stated:

"Appellant urges as to the Edelman construction that the outer end of his outer foil does not protrude beyond the end of the other foil and does not directly overlie and engage the underlying area of said outer foil as specified in count 1, for example, and similarly in count 2. It is true that Edelman's drawing is not especially clear as to this construction. In accordance with Fig. 10 of Edelman the outer foil 45 extends between anode sections so that when the foil is rolled, it forms separated condenser sections with the outer foil 45 extending between the sections. Appellant presents an *illustration of the Edelman construction* and compares it with a condenser roll as disclosed in the patent to Ruben 1,-710,073. He points out that in the Georgiev construction, which was first rejected on the patent to Ruben, the outer foil is overlapped on the roll proper for various reasons. The patent to Georgiev states:

" 'The outer foil preferably affords extra length to provide one or two extra turns 11' about the condenser, which is kept from unwinding by an encircling band 28. The outer turn or turns 11' perform the threefold functions of a unitary capacitative shield, a mechanical protector for the roll during handling prior to final assembly and a superior container to dissipate heat generated in use.' " (Lines 97 to 104, page 2.)

In the Edelman specification, page 14, we find the following description: "The winding of sheet 45 is continued after element 47 is rolled up so that metal 45 extends beyond and over the element 47. Then a second element like 47, or of different length may be wound up, and so on for any desired number of elements 47 to be assembled in one roll. A completed roll 52,

so made with two elements, such as 47 as diagramed in Fig. 10, is shown in Fig. 11. *The negative sheet 45 is overlapped around the roll 52* and has a tab terminal 49 brought up therefrom," etc. (Italics ours.)

"In our opinion this *underlined* [italicized] statement at least means the sheet 45 extends as such sheet around the roll 52 as completed and therefore forms an overlap in the same manner as in the Georgiev construction. Obviously with such an overlap and a closure by an elastic or cord 48 applied thereto, the outer end of said outer foil protrudes beyond the end of the other foil and directly overlies and engages the underlying area of said outer foil, such as defined in count 1 and similar language in count 2." (Italics quoted).

The advantages claimed to be obtained by a condenser in which the outer end of the outer foil protrudes beyond the end of the other foil, and directly overlies and engages the underlying area of the outer foil, called for by the counts, is explained in appellant's patent. We quote therefrom: "The outer foil preferably affords extra length to provide one or two extra turns 11' about the condenser, which is kept from unwinding by an encircling band 28. The outer turn or turns 11' perform the threefold function of a unitary capacitative shield, a mechanical protector for the roll during handling prior to final assembly and a superior conductor to dissipate heat generated in use."

It is contended by counsel for appellant that there is no description or suggestion in appellee's specification that the negative strip or outer foil extends beyond the end of the outermost positive strip so that the negative strip is overlapped on itself, and that that portion of appellee's specification quoted and relied upon by the Board of Appeals as disclosing the involved invention is entirely consistent with appellee's Fig. 18, where it appears that the negative strip is cut off so that its outer end is flush with the two impregnated gauze strips.

We deem it unnecessary to enter upon a discussion of the purposes to be served by appellee by his Fig. 18, because, standing alone, it clearly does not disclose the involved invention.

Relative to the language in appellee's specification upon which the Board of Appeals apparently rested its decision, that is "The negative sheet 45 is overlapped around the roll 52, * * *" counsel for appellant state in their brief that:

"The opinion of the Board of Appeals (R., p. 59) appears, however, to misconstrue the word 'overlap' as used in the final sentence above quoted. Said final sentence merely sets forth what inherently follows from the sentences immediately preceding the same. *In other words, the roll is made up with the negative strip 45 overlying each of strips 47 and said strip 45, as set forth by Edelman, thereby completely 'overlaps' or enwraps the entire .body of the roll, which is completely encircled thereby.* This is true when the negative strip 45 terminates *flush* with the outer end of the *outermost* of the positive strips 47, exactly as in Fig. 18. The strip 45 in completely encircling the roll as it does, overlaps it or is wrapped about it. The outer turn of the strip 45 extends completely around the roll and overlaps, overlies or covers various parts, including the positive strips 47, all of which are completely encircled by said complete outer turn.

"There is no disclosure or implication, however, that the outer end of strip 45 extends even beyond the end of the outermost positive strip 47. The strip 45 is described by Edelman as 'overlapped around the roll 52,' but only if the outer end of strip 45 after being 'overlapped around the roll 52' were further extended to overlap over itself, could it be said that it is 'directly overlying and engaging the underlying area of said outer foil' as recited broadly in count 1." (Except for the words flush and outermost, italics ours.)

It is true as argued by counsel for appellant that appellee did not state in his application as originally filed that his negative strip overlapped on itself and engaged its underlying area. Nevertheless, he did state in his specification that the winding of the negative strip continued after the first positive strip was rolled up so that the negative strip extended "beyond and over" the first positive strip, and that a second positive strip of the same length as the first or of different length might be wound up, or that any desired number of positive strips could be assembled in one roll. He then stated in his specification: "A completed roll 52, so made with two elements, such as 47 as diagramed in Fig. 10, is shown in Fig. 11. The negative sheet 45 is overlapped around the roll 52 and has a tab terminal 49 brought up therefrom, while tab terminals 5 and 5ª from two elements, such as 47, Fig. 10, are brought up in usual manner. A rubber band 48 holds the roll 52 in place for subsequent handling."

Figure 10, referred to in the quoted excerpt, shows two positive strips spaced apart with the negative strip extending or protruding beyond the outermost end of the second positive strip for a considerable distance.

Bearing in mind that appellee stated in his specification, hereinbefore quoted, that Fig. 11 is a completed roll made up of two positive strips and a common negative strip, as diagramed in his Fig. 10, we think it is clear that the statement in his specification to the effect that the negative sheet was overlapped around the roll, meant that it extended or protruded beyond the outermost end of the second positive strip, and overlapped on itself, so that it engaged its "underlying area." But whatever the purpose of appellee in the use of the quoted language, it would be an utter impossibility to make the completed roll, shown in Fig. 11, by means of the elements as shown in Fig. 10, in the manner stated by appellee, without having the negative strip extend or protrude beyond the outermost end of the second positive strip, and come in contact with or engage its "underlying area," as called for in the appealed counts. It may be observed, furthermore, as stated in appellee's specification and as disclosed in his Fig. 11, that a rubber band is used to hold the completed roll in place precisely as is done by appellant.

Appellee's original claims 9 and 11 read:

"In the electrical condenser art, a condenser composed of a common negative electrode and a plurality of separated filmed electrodes and impregnated fibrous sheets separating said negative electrode from said filmed electrodes, characterized by the fact that said negative electrode overlaps each of said filmed electrodes."

"In the electrical condenser art, a condenser composed of a common negative electrode sheet, a plurality of filmed electrodes, and spacer sheets therefor impregnated with a chemical mixture, characterized by the fact that said negative sheet overlaps said filmed electrodes and is wrapped around said condenser to form a common negative terminal therefor."

We think it is apparent, therefore, that, although the term "overlap" may mean "either, to extend over a part of; or, to extend over and beyond" (see Webster's New International Dictionary), it was used

in appellee's original claims 9 and 11 in the sense that the negative strip extended over and beyond each of the positive strips. It is true, as claimed by counsel for appellant, that the advantages obtained by having the negative strip extend over and beyond the outermost end of the last positive strip so that, when the roll—52—shown in appellee's Fig. 11, is complete, the negative strip engages its underlying surface, were not mentioned in appellee's application. Nevertheless, having clearly disclosed the structure called for by the claims constituting the counts in issue, appellee is entitled to make such claims.

We are of opinion, therefore, that the tribunals of the Patent Office reached the right conclusion. The decision of the Board of Appeals is affirmed.

Affirmed.

GRAHAM, Presiding Judge, and BLAND, Associate Judge, dissent.